F I L E D
Clerk
District Court
FEB 24 2025
for the Northern Mariana Islands
By_____
(Deputy Clerk)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN MARIANA ISLANDS**

XI HUANG,

               Petitioner,

    v.

UNITED STATES OF AMERICA,

               Respondent.

**Case No. 1:17-cv-00011**
**(Related Case: 1:15-cr-00014)**

**DECISION AND ORDER DENYING MOTION FOR RELIEF FROM JUDGMENT UNDER FEDERAL RULES OF CIVIL PROCEDURE 60(b)(3) AND (6)**

**I.      INTRODUCTION**

Petitioner Xi Huang, a federal inmate, filed this Motion for relief pursuant to Fed. R. Civ. P. 60(b)(3) and (6). (Mot. 1, ECF No. 13.) Huang alleges that he is not "challenging his conviction nor sentence," but rather is "requesting relief in the form of strickening-out [sic] and/or removing the leadership role enhancement initiated by the Government for its inclusion in his PreSentence [sic] Investigation Report . . . , as this enhancement was based on misrepresentation and fraud on the Court." (*Id.* at 2.) He also argues that the evidence supporting application of the enhancement is hearsay, and that "there was no evidence indicating he had control over his co-conspirator." (*Id.* at 6–7.) Huang further argues that removing the leadership enhancement would qualify him for an additional two-level decrease as a zero-point offender under §4C1.1(a) of the United States Sentencing Guidelines ("USSG") and an additional two-level reduction under "the Safety Valve Provision." (*Id.* at 5.) For the reasons stated herein, the Motion is denied.

//

/

- 1 -

## II.   BACKGROUND

On August 12, 2016, Huang was sentenced to 188 months imprisonment with credit for time served for his conviction of conspiracy to possess with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 846, 841(a), and 841(b)(1)(C). (*See* Judgment 1–2, ECF No. 96 *in* 1:15-cr-00014.) At sentencing, the Court calculated Huang's Guidelines range to be 210–262 months based on a total offense level of 37 and criminal history score of zero, granted a downward variance, and sentenced Huang to 188 months. (PSR ¶¶ 50, 55, ECF No. 102 *in* 1:15-cr-00014; Statement of Reasons 1–3, ECF No. 96-1 *in* 1:15-cr-00014.) To arrive at the calculation of the total offense level, the Court applied a two-point enhancement pursuant to USSG §3B1.1(c) for Huang's leadership role in the conspiracy. (PSR ¶ 45; *see* Order Denying Mot. Vacate 10, ECF No. 4.)

Huang appealed the judgment in the case through new private counsel (ECF No. 127 *in* 1:15-cr-00014), but the appeal was ultimately dismissed by stipulation of the parties (ECF No. 191 *in* 1:15-cr-00014). Subsequently, Huang filed a motion asserting ineffective assistance of trial counsel, based in part on counsel's failure to object to the two-point enhancement for Huang's leadership role. (*See* Order Denying Mot. Vacate 5, 10.) The Court denied the motion because Huang failed to demonstrate any prejudicial effect of applying the two-point enhancement; because the Court varied downwards during sentencing, Huang's pronounced sentence of 188 months was within the Guidelines range for a total offense level of 35——the appropriate offense level had the two-point leadership enhancement not applied. (*See id.* at 10.) The Ninth Circuit denied Huang's request for a certificate of appealability of this Court's decision. (ECF Nos. 8–9.)

On January 7, 2019, Huang filed his first motion for relief pursuant to Fed. R. Civ. P. 60(b)(6), asserting a "defect in the integrity of the federal habeas proceeding," in that without

the leadership role enhancement, he "would have been eligible for two point reduction under safety valve provision of USSG §5C1.2(a)(1)–(5) [sic], as acknowledged by the Probation Officer and AUSA." (First Mot. 6, ECF No. 10; *see* Order Denying First Mot. 2, ECF No. 11.) The Court denied the motion both because the Ninth Circuit had already rejected Huang's argument, and because a review of the presentence investigation reports and transcript of the sentencing hearing did not support his claims. (Order Denying First Mot. 2–3.) In particular, this Court noted:

> The addendum (ECF No. 87-1) to the final presentence investigation report shows that the Assistant United States Attorney objected to application of the safety valve in the initial presentence investigation report, not because of Petitioner's leadership role, but because he had not truthfully provided all information and evidence he had concerning the offenses, as required by U.S.S.G. § 5C1.2(a)(5).

(*Id.* at 3.)

On November 24, 2023, Huang filed a pro se motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c) based in part on Amendment 821 to the USSG. (Sent. Reduct. Mot. 1, ECF No. 278 *in* 1:15-cr-00014.) In his motion, Huang argued that the Court erroneously applied the leadership enhancement and there was insufficient evidence to support it. (*Id.* at 12; *see* Order Denying Sent. Reduct. Mot. 6–7, ECF No. 289 *in* 1:15-cr-00014.) On February 8, 2024, the U.S. Probation Office filed a Supplement to Huang's Presentence Investigation Report pursuant to Amendment 821, determining that Huang was not eligible for the zero-point offender reduction based on the leadership enhancement he received. (*See* ECF No. 283 *in* 1:15-cr-00014 at 1.) On July 16, 2024, the Court denied Huang's motion for a sentence reduction pursuant to Amendment 821 because he had "not identified an intervening change in law or defect in his original proceeding that would serve as an additional basis to reduce his sentence." (Order Denying Sent. Reduct. Mot. 7.)

On September 11, 2024, Huang filed this instant, second motion for relief pursuant to Fed. R. Civ. P. 60(b). (Mot.) In this Second Motion, in addition to asserting that his co-defendant committed fraud on the Court, he renews the claim he raised in his first motion for relief——that his trial counsel, Robert T. Torres, rendered ineffective assistance of counsel for failing to object to the leadership role attributed to him and included in the revised presentence report. (*Id.* at 5; *see* First Mot. 6–7.)

## III.    LEGAL STANDARD

Under Fed. R. Civ. P. 60(b)(3), a district court may grant relief from a final judgment for fraud or other misconduct by the opposing party. *Cozzetti v. United States*, 976 F.2d 736 (9th Cir. 1992) (citing *Lafarge Conseils Et Etudes, S.A. v. Kaiser Cement & Gypsum Corp.*, 791 F.2d 1334, 1337–38 (9th Cir. 1986)). Further, under Fed. R. Civ. P. 60(b)(6), a district court may grant relief from a final judgment for any just reason. "Rule 60(b)(6) has been used sparingly as an equitable remedy to prevent manifest injustice." *United States v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049 (9th Cir. 1993). In the habeas context, the court considers six factors: "(1) a showing of extraordinary circumstances, such as a change in intervening law; (2) the petitioner's exercise of diligence in pursuing the issue during federal habeas proceedings; (3) interest in finality; (4) delay between the finality of the judgment and the motion for Rule 60(b)(6) relief; (5) degree of connection between the extraordinary circumstance and the decision for which reconsideration is sought; and (6) comity." *Hall v. Haws*, 861 F.3d 977, 987 (9th Cir. 2017) (citing *Phelps v. Alameida*, 569 F.3d 1120, 1135–40 (9th Cir. 2009)).

## IV.    DISCUSSION

Huang argues that the leadership enhancement included in his PSR was based on "misrepresentation and fraud on the Court." (Mot. 2.) The Court disagrees. Huang's Amended Final PSR states:

The defendant was a leader in this case because he coordinated the delivery and pick-up of the paint cans containing the methamphetamine; paid for co-defendant Shicheng Cai's travel and lodging; took Cai to get his fake CNMI driver's license in China; purchased cell phones for himself and Cai after arriving on Saipan; and was going to pay Cai $7,000 to $8,000 for helping him.

(PSR ¶ 45.)

Co-defendant Shicheng Cai, who is Huang's brother-in-law, testified at co-defendant Zhaopeng Chen's trial; Cai's testimony and the exhibits received into evidence corroborate the facts in the PSR. (*See* Trial Tr. 83, 88, ECF No. 195 *in* 1:24-cr-00015) At trial, Cai testified that Huang was "in charge of communicating" about the delivery and pick-up of drugs (*id.* at 89); Huang paid for Cai's travel and lodging in Putian, China——where Cai traveled to obtain a fake driver's license to use for picking up drugs on Saipan (*id.* at 88, 93; Cai's Fake CNMI Driver's License, Ex. 20); Huang told Cai that he needed the fake driver's license to pick up drugs on Saipan and went with him to get the fake license (*id.* at 93–94); Huang planned Cai's travel to Saipan (*id.* at 97–98); Huang drove Cai around Saipan to familiarize him with the drug delivery routes (*id.* at 101); Huang purchased cellphones for Cai (*id.* at 157) and told him where to pick up a pre-paid sim card (*id.* at 105–106); Huang paid for Cai's car rental on Saipan (*id.* at 112); Huang paid for Cai's lodging on Saipan (*id.* at 157); and Cai expected he would be paid $7,000 to $8,000 by Huang or his wife for Cai's role in the conspiracy (*id.* at 156).

To controvert this evidence, Huang offers a self-serving affidavit which states: he "did not coordinate the delivery or pick-up of any controlled substance;" he was an equal to Cai in the context of the conspiracy; he did not promise Cai or any other person that he would pay them to further the conspiracy; and in discovery provided to him, Cai attested to being asked by an individual named Xu "to look for someone who would be paid 50,000 Chinese currency (equivalent to about 7,000 to 8,000 U.S. Dollars) to pick-up the drugs." (Mot. 12.)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

First, the Court finds the information included in Huang's PSR regarding his role in the offense to be reliable, given that it was corroborated by Cai's testimony at his co-defendant's trial. *See United States v. Ford*, 821 F. App'x 742, 749 (9th Cir. 2020) (relying on hearsay statements for sentencing because they were corroborated by testimony and evidence at trial). Further, Huang's personal background, as detailed in his PSR and not challenged by Huang, gives credible weight to Cai's testimony. Huang's father was a businessman who, in 1997, established businesses in the CNMI——initially on the island of Tinian and then on the island of Saipan. (PSR ¶ 60.) Huang, a citizen of the People's Republic of China, briefly lived in the CNMI starting in 2004 as a teenager when he attended Tinian High School, and then Northern Marianas College on Saipan in 2005. (PSR ¶¶ 59, 61.) In 2008, his older brother was arrested and subsequently incarcerated in a federal prison for drug offenses. (*Id*. ¶¶ 59, 61.) When his brother was arrested, Huang was sent back to China by his parents. (*Id*. ¶ 61.) While in China, Huang married and had a son, but travelled back to Saipan on occasion. (*Id*.) Huang's personal background lends credibility to Cai's testimony that it was Huang who was in charge of importing the methamphetamine from China to Saipan. The information in Huang's PSR provides more than a sufficient basis for the application of the leadership enhancement. *See United States v. Guzman*, 5 F. App'x 631 (9th Cir. 2001) (two-point enhancement applied when defendant recruited driver, arranged flights, provided money for expenses, and paid driver for his services).

Second, even accepting Huang's factual statements in his affidavit to be true, the evidence that Huang instructed Cai that Cai needed to obtain a fake CNMI driver's license; coordinated Cai's travel to obtain a fake driver's license; and planned his travel to Saipan and paid for his on-island expenses is sufficient to support the application of the leadership enhancement. *See United States v. Vinge*, 85 F.4th 1285, 1288 (9th Cir. 2023) (articulating that

enhancement applies if defendant "was responsible for organizing others for the purpose of carrying out the crime"); *United States v. Kabir*, 51 F.4th 820, 826 (9th Cir. 2022) (affirming district court's application of enhancement when court reasonable concluded defendant had "necessary influence and ability to coordinate the behavior of others so as to achieve a desired criminal result").

Given all this evidence, Huang's argument that his trial counsel Mr. Torres rendered ineffective assistance of counsel for failing to object to the leadership role attributed to him and included in his presentence report does not affect the outcome of this Court's findings and ultimate application of the leadership enhancement. Furthermore, the Court has already decided that the application of Huang's leadership enhancement was not the basis for removing his safety valve reduction; the reduction was removed because "he had not truthfully provided all information and evidence he had concerning the offenses, as required by U.S.S.G. §5C1.2(a)(5)." (Order Denying First Mot. 3.)

## V.   CONCLUSION

For the foregoing reasons, the Court DENIES Huang's Motion for relief pursuant to Fed. R. Civ. P. 60(b)(3) and (6). A certificate of appealability is also denied.

IT IS SO ORDERED on this 24th day of February 2025.

_____
RAMONA V. MANGLONA
Chief Judge

- 7 -